United States District Court
Southern District of Texas
**ENTERED**
August 28, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TANISHA MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-3048 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is Plaintiff Tanisha Moore's ("Moore") Opposed Motion for Joinder of Additional Party Plaintiff (ECF No. 37), Defendant City of Houston's (the "City") Opposed Motion to Strike Plaintiff's Surreply (ECF No. 28), Defendants the City and Houston Police Department's ("HPD") Rule 12(b)(6) Motion to Dismiss (ECF No. 12), Defendant Officer Jaime Vargas' ("Vargas") Rule 12(b)(6) Motion to Dismiss (ECF No. 13), Defendant Officer Cameron Overstreet's ("Overstreet") Rule 12(b)(6) Motion to Dismiss (ECF No. 14), Defendant Officer Marco Lopez's ("Lopez") Rule 12(b)(6) Motion to Dismiss (ECF No. 19), and Defendants Daryl Hudeck ("Hudeck"), Sean McCreary ("McCreary"), Erik Holland ("Holland"), Brandon Hollis ("Hollis"), Tony Villa ("Villa"), Charles Dexter ("Dexter"), and Jesse Seay's ("Seay") (collectively,

"Majority Defendants") Rule 12(b)(6) Motion to Dismiss (ECF No. 22).[1]  Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Moore's Opposed Motion for Joinder of Additional Party Plaintiff (ECF No. 37) be **DENIED**, the City's Opposed Motion to Strike Plaintiff's Surreply (ECF No. 28) be **DENIED**, the City and HPD's Rule 12(b)(6) Motion to Dismiss (ECF No. 12) be **GRANTED**, Vargas' Rule 12(b)(6) Motion to Dismiss (ECF No. 13) be **GRANTED**, Overstreet's Rule 12(b)(6) Motion to Dismiss (ECF No. 14) be **GRANTED**, Lopez's Rule 12(b)(6) Motion to Dismiss (ECF No. 19) be **GRANTED**, and Majority Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 22) be **GRANTED**.

## I.    Background[2]

Moore brings this action pursuant to 42 U.S.C. § 1983 and the Texas Wrongful Death and Survivorship Statute against the City, HPD, Vargas, Overstreet, Lopez, and Majority Defendants (collectively "Defendants") on behalf of her son, Dexter Ceasar ("Ceasar" or "Mr. Ceasar").[3]

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 40).

[2] "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).  The facts set out in the background section are a restatement of Moore's allegations found in her Complaint.

[3] Vargas, Overstreet, Lopez, and Majority Defendants are collectively referred to as "Officer Defendants."

According to the Complaint, on April 24, 2022, at approximately 10:00 a.m., members of HPD Swat Team and Crime Suppression Team, including Officer Defendants, arrived at a gas station to apprehend Ceasar for an outstanding warrant.  (ECF No. 1 at ¶ 17).  When Officer Defendants arrived at the gas station, Ceasar was sitting in the passenger seat of a parked red car.  (*Id.* at ¶ 19).  The driver of the red car exited the vehicle and went towards the store.  (*Id.* at ¶¶ 20).  After the driver exited, and, while Ceasar was still in the passenger seat, SWAT vehicles and an HPD unit converged on the vehicle.  (*Id.* at ¶ 21).  At that time, Ceasar moved to the driver's seat, backed the vehicle up, and proceeded to attempt to leave the parking lot.  (*Id.* at ¶ 22).  When Ceasar began moving the car forward, one officer began firing off several shots from his gun and the vehicle stopped.  (*Id.* at ¶ 24).  Officers then surrounded his car so that Ceasar was unable to leave.  (*Id.* at ¶ 25).  Ceasar called his sister after this exchange and remained on the phone with her through the subsequent actions.  (*Id.* at ¶ 26).

Officers asked Ceasar to exit the vehicle and, after requesting Ceasar exit the vehicle multiple times, an officer fired two rounds of tear gas into Ceasar's car while he was still on the phone  (*Id.* at ¶¶ 27–34).  Ceasar's body involuntarily recoiled due to the tear gas and, a few seconds later, an officer fired his gun, striking Ceasar in the head.  (*Id.* ¶¶ 35–36).  Moore maintains at

no point did Ceasar attempt to escape, make any threats, or utilize a weapon. (*Id.* at ¶¶ 39–43).  Ceasar passed away at the hospital within twenty-four hours after the bullet struck him in the head.  (*Id.* at ¶ 46).  The original medical report ruled Ceasar's death as a homicide by a gunshot wound but was later amended ruling the death as suicide.  (*Id.* at ¶¶ 49–50).

## II.    Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).  In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) ("Although a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level . . . .") (internal quotations omitted)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Firefighters' Ret. Sys.*, 894 F.3d at 669 (quoting *Iqbal*, 556 U.S. at 678). "The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 568 (S.D. Tex. 1999) (internal quotations omitted).

To determine whether to grant a Rule 12(b)(6) motion, a court may only look to allegations in a complaint to determine their sufficiency. *Id.*; *Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175-TJW, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011). "A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items

appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned." *Joubert on Behalf of Joubert v. City of Houston*, No. 4:22-cv-3750, 2024 WL 1560015, at *2 (S.D. Tex. Apr. 10, 2024).

## III.   Discussion

There are five motions pending before the Court: (1) Moore's Opposed Motion for Joinder of Additional Party Plaintiff (ECF No. 37); the City's Opposed Motion to Strike Plaintiff's Surreply (ECF No. 28); the City and HPD's Rule 12(b)(6) Motion to Dismiss (ECF No. 12); Vargas' Rule 12(b)(6) Motion to Dismiss (ECF No. 13); Overstreet's Rule 12(b)(6) Motion to Dismiss (ECF No. 14); Lopez's Rule 12(b)(6) Motion to Dismiss (ECF No. 19); and Majority Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 22). Each motion is addressed in turn.[4]

---

[4] Defendants insert video footage from the gas station—via Youtube hyperlink—to contradict Moore's allegations. (ECF No. 12 at 6 n.1; ECF No. 13 at 6 n.1; ECF No. 14 at 6 n.1; ECF No. 19 at 6 n.1; ECF No. 22 at 5 n.1). Defendants argue the video should be considered because Moore references body-worn cameras and a video in her Complaint and is central to her claims. (*Id.*). Moore opposes consideration of the video and argues if the Court does consider the video, the motion to dismiss must be converted to a motion for summary judgment. (*See* ECF No. 16). "The general rule is that courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response." *Ramos v. Taylor*, 646 F. Supp. 3d 807, 814 (W.D. Tex. 2022). "However, the Court may consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Id.* (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)). Here, the video is not attached to the Complaint, but is simply referenced. (*See* ECF No. 1). Even so, the videos are not central to the Complaint. *See id* at 815. ("Nor are Defendant's videos central to Plaintiff's claim. In general, in Fifth Circuit cases where the court considers evidence at the motion to dismiss stage, the use of such evidence is uncontested. Often, the evidence is 'central' to the claim in that it is a written instrument at

### A.    The City's Opposed Motion to Strike Plaintiff's Surreply

The City requests the Court strike Moore's sur-reply (ECF No. 23) arguing it is not in compliance with the Local Rules.  (ECF No. 28 at 2). However, United States District Judge Andrew Hanen's Local Rules provides, "[a] sur-reply may be filed as per the local rules; but the Court will not wait on a sur-reply to rule. The Court may rule on any motion once it becomes ripe regardless of whether a response, reply, or sur-reply has been filed."  Judge Hanen's Civil Procedures § 7D.  Also, "[a]fter the motion, response, reply, and sur-reply are filed, the Court will not entertain any additional or supplemental filings unless they are accompanied by a motion for leave to file."  Judge Hanen's Civil Procedures § 7F.  Although the City argues Moore must seek leave to amend before filing a sur-reply, there is no authority in the Local Rules that prohibits the Court from considering Moore's sur-reply and the City does not cite to such authority in the Local Rules.  (*See* ECF No. 28).  Moreover, even Judge Hanen has reviewed and denied an identical motion (ECF No. 29) filed by Vargas.  (ECF No. 36).  As such, there is no basis to strike or deny Moore's sur-reply and the Court recommends the City's Opposed Motion to Strike Plaintiff's Surreply (ECF No. 28) be denied.

---

the heart of a dispute, as permitted by Rule 10(c), such as a contract or lien.").  As such, the Court will not consider the video at the motion to dismiss stage.

**B.      The City and HPD's Motion to Dismiss**

The City and HPD argue Moore's Complaint should be dismissed pursuant to Rule 12(b)(6) because (1) HPD is not a separate legal entity that can sue and be sued separate and apart from the City; (2) Moore fails to allege a valid waiver of the City's immunity pursuant to the Texas Tort Claims Act ("TTCA") regarding the state law claims against the City; (3) the TTCA election of remedies scheme precludes the state law claims against the individual officers; (4) Moore's Fourteenth Amendment claims are framed pursuant to the Fourth Amendment; and (5) Moore fails to sufficiently allege municipal liability under § 1983 against the City.  (ECF No. 12 at 7).  The Court will address these arguments as necessary.

**i.      HPD**

HPD argues Moore's Complaint should be dismissed because it is not an entity with the capacity to be sued.  (*Id.*).  Moore concedes HPD is not an entity with the capacity to be sued and agrees HPD should be dismissed.  (ECF No. 16 at 11).

It is well settled in the Southern District of Texas that HPD is "a subdivision of the City of Houston and therefore does not have a separate legal identity that would allow it to sue and be sued."  *McAfee v. Houston Police Dep't*, No. 19-cv-112, 2019 WL 12021829, at *1 (S.D. Tex. Mar. 19, 2019); *see,*

*e.g.*, *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 450 (S.D. Tex. 2021) (dismissing claims against the Houston Police Department with prejudice because it is not a separate legal identity); *Menefee v. Houston Police Dep't*, No. 4:14-cv-01705, 2016 WL 3093131, at *5–6 (S.D. Tex. May 11, 2016) (examining the City of Houston's charter and dismissing the claims against the Houston Police Department because it is not a separate entity), *report and recommendation adopted*, No. 14-cv-1705, 2016 WL 3077487 (S.D. Tex. May 31, 2016); *Henry v. City of Houston*, No. 10-cv-2545, 2012 WL 950061, at *6 (S.D. Tex. Mar. 19, 2012) ("The City of Houston Police Department is a department within the City of Houston and does not qualify as an independent entity with capacity to sue or be sued.  Therefore, plaintiff cannot assert a cause of action against the City of Houston Police Department.").

Accordingly, the Court recommends Moore's claims against HPD be dismissed.

### ii.      The City

The City seeks dismissal under Rule 12(b)(6), making multiple arguments.  The Court will first address whether Moore has sufficiently alleged municipal liability against the City under § 1983.  (ECF No. 12 at 8).

### 1.    Section 1983

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights.  42 U.S.C. § 1983.  Importantly, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To prevail upon a § 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Moore's Complaint appears to assert three theories of municipal liability: the City (1) had multiple unconstitutional policies, practices, and/or customs; (2) failed to adequately train, supervise, and discipline; and (3) ratified unconstitutional conduct.  (ECF No. 1 at ¶¶ 77–78).  While Moore need not offer proof of her allegations at this stage, she "still must plead facts that plausibly support each element of § 1983 municipal liability under" each of her theories.  *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).

10

### a.    Policy Liability

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To establish a § 1983 claim against a municipality, "a plaintiff must demonstrate three elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose moving force is the policy or custom." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted). "[U]nder § 1983, local governments are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted) (emphasis in original). "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Cox v. City of Dall., Tex.*, 430 F.3d 734, 748–49 (5th Cir. 2005)). "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'" *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). "He

or she must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)).

Here, Moore does not identify a specific policymaker. (*See* ECF No. 1). Rather, Moore simply alleges, "Defendants and other officers at the scene of the shooting incident were acting under the color of law and pursuant to customs, practices, and policies of the City . . . and the HPD in regard to the use of deadly force as authorized and/or ratified by the Policymakers." (*Id.* at ¶ 77). However, "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284 (5th Cir. 2016). Accordingly, to survive a motion to dismiss, a plaintiff need "only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker" and a plaintiff's "complaint d[oes] not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme." *Id.* at 285. Because this case is at the motion to dismiss stage, Moore need not identify a specific policymaker for City, but Moore must allege sufficient facts to establish the policy was promulgated or ratified by the City.

12

Next, the City argues Moore "fails to adequately plead an official policy because [Moore] does not coherently articulate whether she is challenging actual policies as opposed to widespread customs or practices." (ECF No. 12 at 11). Even so, the City argues its "official use of force policy is facially constitutional." (*Id.* at 14).

Moore's Complaint alleges multiple policies:

- "The City . . . and [HPD] have a pattern and history of condoning police officers use of deadly force in situations where the use of deadly force is not warranted." (ECF No. 1 at ¶ 56).

- "The City . . . and [HPD] have a pattern and history of condoning police officers use of excessive force against citizens." (*Id.* at ¶ 57).

- "Plaintiff would show that prior to April 24, 2022, [HPD] knew or should have known that Defendants exhibited a pattern of escalating encounters with the public." (*Id.* at ¶ 76).

- "Defendants and other officers at the scene of the shooting incident were acting under the color of law and pursuant to customs, practices, and policies of the City of Houston and the HPD in regard to the use of deadly force as authorized and/or ratified by the Policymakers." (*Id.* at ¶ 77).

13

- "[T]he City of Houston and Houston Police Department failed to maintain an adequate policy on the proper use of deadly force and alternatives thereto." (*Id.* at ¶ 81).

- "Maintaining a culture of police corruption that allowed police officers to feel that they can act without impunity through a pattern or practice of failing to adequately discipline and expurgate officers who violate policies and procedures." (*Id.*).

An official policy can exist in two ways. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow*, 614 F.3d at 168. Second, an official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). Proof of a custom or policy can be shown by "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or where "a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169 (emphasis in original). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* "Consistent with the commonly understood meaning of custom,

14

proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy." *Paz v. Weir*, 137 F. Supp. 2d 782, 799 (S.D. Tex. 2001). Moore does not point to an official policy, but rather asserts there is a "failure to maintain an adequate policy." (ECF No. 1 at ¶ 81). Because Moore points to no formal policy statement, she must demonstrate the City's liability by establishing a pattern of unconstitutional conduct. *See Peterson*, 588 F.3d at 847.

Moore appears to focus on patterns of unconstitutional conduct to establish an official policy or custom. (*See* ECF No. 1). Specifically, Moore alleges the City has a pattern and practice of using deadly and excessive force when unwarranted. (*Id.* at ¶¶ 56–57, 81). To support these allegations, Moore cites to two specific circumstances where she alleges HPD officers used excessive or deadly force against two citizens without justification. (*Id.* at ¶¶ 58–59). One of these circumstances occurred a few days after the incident in the instant case and the other allegedly occurred in August 2015. (*Id.*). "Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Zavala v. Harris Cnty., Tex.*, No. 22-20611, 2023 WL 8058711, at *2 (5th Cir. Nov. 21, 2023) (internal quotations

15

omitted).  "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"  *Peterson*, 588 F.3d at 851 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).  Here, the two specific instances of excessive and deadly force, as alleged by Moore, do not meet the similarity and frequency standard.  For instance, one circumstance involved an unarmed individual entering a hospital while he was suffering from hallucinations and an off-duty HPD officer shot him, which is dissimilar to the instant case.  (ECF No. 1 at ¶ 59).  Further, the two instances are not sufficiently numerous to amount to a pattern.  *See Peterson*, 588 F.3d at 851 ("The district court, relying on *Pineda*, held that the 27 complaints on which Peterson relies were insufficient to establish a pattern of excessive force.  After careful examination of the record, we conclude the district court did not err."); *see also Chavez v. Alvarado*, 550 F. Supp. 3d 439, 457 (S.D. Tex. 2021) ("Alleging two dissimilar incidents, over an eight-year period, involving deadly police force in the fourth-largest city in the United States, is insufficient to plead a practice so persistent and widespread as to have the force of law as a municipal policy."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (finding no pattern when there were 11 incidents of warrantless searches in Houston).

16

Further, Moore cites statistics of officer shootings involving HPD and alleges the number of unwarranted officer-involved shootings have increased over the years. (*Id.* at ¶¶ 60–64). For example, Moore alleges, HPD "went from a low of 15 officer shootings in 2017, to an increasing number of shootings in each successive year, with 29 officer involved shooting[s] in 2022, the year of Dexter Ceasar's death." (*Id.* at ¶ 60). However, other than the two specific instances Moore alleges, the other supporting allegations are simply statistics. The statistics Moore references fail to establish how such instances were similar and specific enough to establish a policy. "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (quoting *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Rather, the only specificity Moore provides is listing the number of shootings resulting in death, the number of shootings where the suspect did not have a weapon, and the number of shootings involving a warrant. (ECF No. 1 at ¶¶ 60–63); *cf. Barnes v. City of El Paso*, 677 F. Supp. 3d 594 (W.D. Tex. 2023) (holding plaintiff sufficiently alleged a pattern when alleging twenty-one specific incidents in detail *and* supported the detailed examples with statistics) (emphasis added). Here, the

Court finds Moore has not alleged enough similar instances in detail to establish a pattern or custom.

        **b.**    **Failure to Train, Supervise, and Discipline**

To establish *Monell* liability based on a municipality's failure to train or supervise,

> a plaintiff must "prove that (1) the [municipality] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."

*Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Pena*, 879 F.3d at 623). "To show deliberate indifference, a plaintiff . . . must allege a 'pattern of similar constitutional violations by untrained employees.'"[5] *Id.* (quoting *Connick*, 563 U.S. at 62).

Moore's Complaint asserts general allegations that the City failed to train (*see* ECF No. 1 at ¶¶ 76, 77, 78, 81) or supervise (*id.* at ¶¶ 78, 81) throughout the Complaint. However, "Plaintiff[] do[es] not provide any facts from which the court can draw a causal connection between any failure to train [or supervise] and the alleged constitutional violations." *See Garcia v. Harris*

---

[5] If a plaintiff does not allege a pattern, it is "possible to establish deliberate indifference through the single-incident exception." *Hutcheson*, 994 F.3d at 482. However, Moore does not allege the single-incident exception applies here.

*Cnty.*, No. 4:22-cv-198, 2022 WL 2230469, at *3 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, No. 4:22-cv-198, 2022 WL 2222972 (S.D. Tex. June 21, 2022).   Further, Plaintiff's assertions that the City acted with "deliberate indifference," without factual support, does not sufficiently allege the "pattern of similar constitutional violations by untrained employees" necessary to satisfy the deliberate indifference prong.  *Hutcheson*, 994 F.3d at 482 (internal quotations omitted).   Thus, the Court recommends Moore's claims against the City under a failure to train or failure to supervise theory be dismissed.

Similarly, to plausibly plead a failure to discipline claim, a plaintiff must show "(1) that the city's failure to discipline amounted to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights."  *Verastique v. City of Dall., Tex.*, 106 F.4th 427, 432 (5th Cir. 2024).   "So, to survive dismissal, plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged here."  *Id.*

Here, Moore's Complaint asserts general allegations that the City failed to discipline.  (*See* ECF No. 1 at ¶¶ 55, 78, 81).  The only "prior instance" Moore references is to "[a]n analysis in 2016 found that from 2010-2016, of 40 cases involving unarmed individuals, only five officers were disciplined."  (*Id.* at ¶

19

64).  However, this instance or study that Moore cites lacks the factual details needed to show similarity between the instant case and those that occurred from 2010 to 2016.  *See Verastique*, 106 F.4th at 432 ("Though the complaint lists nineteen incidents involving one officer, those incidents do not constitute 'any pattern of conduct—much less a pattern of similar violations.' Most are conclusory and devoid of critical factual enhancement." (citation omitted)).  Further, the court in *Verastique* held a plaintiff's references to prior instances were vague and barren of factual support by explaining:

> [O]f the nineteen incidents, eight not only are devoid of factual support but are also inscrutably vague. Indeed, the complaint describes those eight in one sentence: "Between 1998 and 2000, another eight complaints were filed against Defendant Rudloff for alleged physical and verbal abuse." Where did those incidents take place? Did all eight involve both physical and verbal abuse? How did the abuse occur? What even are the alleged constitutional violations? How was each complaint resolved? Plaintiffs do not say, and we have not a clue.

*Id.* (citation omitted).  Following the rationale of the Fifth Circuit, Moore's failure to discipline allegations are vague and barren of factual support.  As such, the Court recommends Moore's claims against the City under a failure to discipline theory be dismissed.

### c.   Ratification

A municipality may also be held liable under *Monell* by the theory of ratification.  *See Garcia*, 2022 WL 2230469, at *4.  Ratification applies to "a

scenario in which a municipality could be held liable for a single episode of conduct initiated by a non-policymaker employee." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004).  Courts in this district have acknowledged that "[t]he precise standard by which to plead a ratification theory is somewhat unclear." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020); *see also Garcia v. Harris Cnty. Tex.*, No. 4:23-cv-0542, 2024 WL 1291531, at *6 (S.D. Tex. Mar. 26, 2024) (explaining the Fifth Circuit's history regarding municipal liability under a ratification theory).  "Nonetheless, 'a clear prerequisite is knowing approval by a policymaker of both conduct and its underlying, improper basis.'" *Garcia*, 2024 WL 1291531, at *6 (quoting *Taylor*, 488 F. Supp. 3d at 537).

Here, Moore's Complaint provides vague ratification allegations.  (ECF No. 1 at ¶¶ 4–13, 77).  Moore alleges each officer defendant "was acting with the complete authority and ratification of their principal, Defendant City of Houston" and "Defendants and other officers at the scene of the shooting incident were acting under the color of law and pursuant to customs, practices, and policies of the City of Houston and the HPD in regard to the use of deadly force as authorized and/or ratified by the Policymakers."  (*Id.*).  These conclusory allegations do not provide the Court with facts showing that a policymaker approved the alleged unconstitutional conduct described in the

Complaint, whether or when a policymaker learned about the alleged conduct, or whether a policymaker made a statement approving of or in defense of the alleged conduct. *See Garcia*, 2022 WL 2230469, at *4. Thus, the Court finds Moore's Complaint does not provide the facts necessary to support ratification. Further, the Court recommends Moore's § 1983 claims against the City be dismissed for failure to adequately allege municipal liability.

### 2.   State Law Claims

Moore asserts a survival action claim and wrongful death claim pursuant to Texas Civil Practice and Remedies Code §§ 71.0004(a), 71.002–71.021 against the City. (ECF No. 1 at ¶¶ 84–91).

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) *the district court has dismissed all claims over which it has original jurisdiction*, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added). "When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims." *Price v. Jefferson Cnty.*, 470 F. Supp. 2d 665, 694 (E.D. Tex. 2006). "Moreover, in the Fifth Circuit, the 'general rule is to dismiss state claims when the federal claims to which they

22

are pendent are dismissed.'" *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)).

Because the Court recommends the federal claims be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. *See Youngblood v. City of Galveston, Tex.*, 920 F. Supp. 103, 107 (S.D. Tex. 1996). As such, the Court recommends the state law claims—survival action and wrongful death claims pursuant to Texas Civil Practice and Remedies Code §§ 71.0004(a), 71.002–71.021—be dismissed.

### C.     Officer Defendants' Motion to Dismiss[6]

Officer Defendants argue Moore's claims against them should be dismissed on three grounds. (ECF No. 13 at 7; ECF No. 14 at 7; ECF No. 19 at 7; ECF No. 22 at 6). First, Officer Defendants argue Moore's Fourteenth Amendment claim should be dismissed as it is framed pursuant to the Fourth Amendment. (*Id.*). Second, Officer Defendants argue Moore's Fourth Amendment claim should be dismissed because they are entitled to qualified immunity. (*Id.*). Third, Officer Defendants argue Moore's Complaint is devoid of any specific facts that any Officer Defendants used any force. (*Id.*).

---

[6] Officer Defendants are represented by the same counsel and their Motions to Dismiss are almost identical. (*See* ECF Nos. 13–14, 19, 22). Thus, the Court will analyze the motions together where applicable.

### 1.    Fourteenth Amendment Claim

Officer Defendants argue Moore's Fourteenth Amendment claim should be dismissed because Moore also frames her claim under the Fourth Amendment.  (ECF No. 13 at 7; ECF No. 14 at 7; ECF No. 19 at 7; ECF No. 22 at 6).  Moore argues that although the use of excessive force falls under the Fourth Amendment, "[t]he final gunshot, the one to the head, caused [Moore]'s son, Dexter Ceasar, to die, and therefore, deprived him of life, without any due process."  (ECF No. 17 at 11; ECF No. 18 at 11; ECF No. 31 at 14; ECF No. 35 at 14).

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Gone v. Smith*, No. 4:16-cv-00684, 2017 WL 978703, at *3 (S.D. Tex. Mar. 14, 2017), *aff'd sub nom. Hernandez v. Smith*, 793 F. App'x 261 (5th Cir. 2019) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)) (quotations omitted).  "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."  *Id.* (quoting *Albright*, 510 U.S. at 274).

Here, Moore agrees that excessive force falls under the Fourth Amendment.  (ECF No. 17 at 11; ECF No. 18 at 11; ECF No. 31 at 13; ECF No.

35 at 13).  Moore appears to assert a Fourteenth Amendment claim for deprivation of companionship and deprivation of due process because Ceasar "was effectively given a death sentence without ever getting to go before a jury" in her Responses to Officer Defendants' Motions to Dismiss.  (ECF No. 17 at 11–12; ECF No. 18 at 11–12; ECF No. 31 at 13–14; ECF No. 35 at 13–14).  However, Moore does not assert a deprivation of companionship or deprivation of trial argument under her Fourteenth Amendment claim in the Complaint. (*See* ECF No. 1).  Because Moore is alleging a Fourteenth Amendment claim— separate from the excessive force allegation—for the first time in her Response, the Court will not consider such a claim at the motion to dismiss stage.  *See Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011) ("When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal.").

Because the Fourth Amendment covers excessive force, Moore should not and cannot seek relief under the Fourteenth Amendment.  *See Gone*, 2017 WL 978703, at *3.  Thus, the Court will consider the excessive force claim under the Fourth Amendment, as it applies to each Officer Defendant.

25

### 2.     Fourth Amendment Claim

Moore asserts a Fourth Amendment violation claim against Officer Defendants for "unreasonable searches and seizures when officers used excessive deadly force to shoot and kill Mr. Ceasar while he posed no immediate threat or danger to officers or other people." (ECF No. 1 at ¶¶ 65–75).  Officer Defendants assert they are entitled to qualified immunity and, even so, Moore does not sufficiently allege the use of force was excessive or clearly unreasonable.[7]  The Court will first address qualified immunity.

### a.     Qualified Immunity

"Qualified immunity shields a government official from liability based on his performance of discretionary functions." *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) (quotations omitted).  To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quotations omitted).  "A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating

---

[7] Officer Defendants argue Moore fails to state a Fourth Amendment claim and Moore fails to allege facts to overcome any of the Officer Defendants' qualified immunity defenses. (ECF No. 13 at 7; ECF No. 14 at 7; ECF No. 19 at 7; ECF No. 22 at 6).  Since the first step of the qualified immunity analysis is whether the facts the Moore alleges make out a violation of a constitutional right, the Court will consider Officer Defendants' 12(b)(6) arguments simultaneously as the qualified immunity contentions.

it."  *Id.* (quotations omitted).  "A court may consider either prong of the qualified immunity analysis first."  *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

As an initial matter, Officer Defendants argue Moore did not allege sufficient facts to infer each Officer Defendant used excessive force.  (ECF No. 13 at 10; ECF No. 14 at 10; ECF No. 19 at 10; ECF No. 22 at 9).  "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quotation omitted).  "Ordinarily, 'qualified immunity claims should be addressed separately for each individual defendant.'"  *Thomas v. Gilley*, No. 3:22-cv-06174, 2023 WL 6531516, at *7 (W.D. La. Sept. 20, 2023), *report and recommendation adopted*, No. 3:22-cv-06174, 2023 WL 6529957 (W.D. La. Oct. 5, 2023) (quoting *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018)); *see Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007) (overruling district court's decision to consider officers' conduct collectively, merely because they acted in unison).  "However, '[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them

27

to consider each officer's actions.'" *Id.* (quoting *Meadours*, 483 F.3d at 422 n.3). "Nevertheless, even where it is 'unclear exactly [which officer] was responsible for each decision,' a 'plaintiff must [ultimately show] that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Navejas v. Jaso*, 700 F. Supp. 3d 532, 537 (W.D. Tex. 2023) (quoting *Cope v. Cogdill*, 3 F.4th 198, 207 n.7 (5th Cir. 2021)). "And at the motion-to-dismiss stage, the plaintiff must plausibly allege as much." *Id.* (citing *Carswell*, 54 F.4th at 312).

Here, Moore has not sufficiently alleged any of the Officer Defendants, individually, violated the Constitution. The only specific references to the Officer Defendants are where she lists the "Parties to the Suit" by alleging that each Officer Defendant:

> is an officer with the [HPD], sued individually, . . . The officer defendant was acting under the color of law in his individual capacity as an HPD officer. [Named Officer Defendant] was acting within the course and scope of his duties as an officer for the City of Houston Police Department. At all relevant times, the officer defendant was acting with the complete authority and ratification of their principal, Defendant City of Houston.

(ECF No. 1 at ¶¶ 4–13). However, throughout Moore's Complaint, she refers to the Officer Defendants collectively or without specificity. (*See* ECF No. 1). For example, Moore alleges, "[a]t time that *one of the members of the SWAT team* shot Mr. Ceasar, there was no reasonable belief that Mr. Ceasar posed a

threat to officers or others." (*Id.* at ¶ 70) (emphasis added). Additionally, Moore alleges, "*one of the SWAT officers* fired off several shots from his gun and the vehicle was stopped," "*[a] SWAT officer* then fired off two rounds of tear gas into Mr. Ceasar's vehicle while Mr. Ceasar was on the phone with his sister," "[a]s a result of the gun shot wound to the head caused by *the SWAT officer*, Mr. Ceasar died," and "*Officers* tried to cover up the excessive use of force by claiming that Mr. Ceasar shot himself from inside the car." (*Id.* at ¶¶ 24, 34, 37, 48) (emphasis added).

Accepting Moore's allegations as true, her Complaint fails to sufficiently state a claim against any of the Officer Defendants individually.[8] *See Navejas*, 700 F. Supp. 3d at 537 ("[Plaintiff] alleges that 'the exact identity' of the tasing officer is 'unknown.' This does not suffice to show that either Officer violated Mr. Navejas' constitutional rights through his own individual actions." (citation omitted)); *see also Schweitzer v. Dagle*, No. 3:22-cv-00273, 2024 WL

---

[8] The Court notes Moore alleges she is not able to identify which Officer Defendant shot Ceasar in the head, but does not provide authority in her Response to Officer Defendants' Motions to Dismiss that exempts Moore from "plead[ing] specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold*, 979 F.3d at 267. Rather, Moore claims she cannot identify a specific officer while complying with Rule 11. (ECF No. 17 at 16; ECF No. 18 at 16–17; ECF No. 31 at 18–19; ECF No. 35 at 18–19). Moore's attempts to make more specific allegations in her Responses to Officer Defendants' Motions to Dismiss cannot be considered because the Court may only look to the Complaint at the motion to dismiss stage. *See Atwater Partners of Tex. LLC*, 2011 WL 1004880, at *1 ("When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal.").

1348415, at \*8 (S.D. Tex. Mar. 27, 2024), *report and recommendation adopted*, No. 3:22-cv-273, 2024 WL 1622636 (S.D. Tex. Apr. 15, 2024) (holding plaintiff failed to state a claim against Officer Trochesset because plaintiff "mentions Trochesset only once in the operative pleading: 'I overheard several [employees on duty] whispering about Sheriff Trochesset being in quarantine.' [and thus,] Trochesset is not personally or directly implicated in any of the alleged constitutional violations."). Because Moore fails to state a claim against the Defendant Officers with specificity to directly or personally implicate them in the alleged constitutional violations, the Court recommends Moore's Fourth Amendment claim against the Officer Defendants in their individual capacity be dismissed.

### 3. Section 1983 Wrongful Death Claim

"This Court has held that 'a plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute.'" *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 264 (5th Cir. 2016) (quoting *Phillips ex rel. Phillips v. Monroe Cnty.*, 311 F.3d 369, 374 (5th Cir. 2002)).

Here, the Court has addressed the sufficiency of Moore's Complaint against the Officer Defendants, finding her Complaint fails to sufficiently state a claim against any of the Officer Defendants individually. Because Moore fails to state a claim against the Defendant Officers with specificity to directly or personally implicate them in the alleged constitutional violations, the Court recommends Moore's § 1983 wrongful death claim against the Officer Defendants in their individual capacity be dismissed.

### 4.   State Law Claims

Moore asserts a survival action claim and wrongful death claim pursuant to Texas Civil Practice and Remedies Code §§ 71.0004(a), 71.002–71.021 against the Officer Defendants. (ECF No. 1 at ¶¶ 84–91).

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) *the district court has dismissed all claims over which it has original jurisdiction*, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added). "When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims." *Price*, 470 F. Supp. 2d at 694. "Moreover, in the Fifth Circuit, the 'general rule is to dismiss state claims when

31

the federal claims to which they are pendent are dismissed.'" *Id.* (quoting *Parker & Parsley Petroleum Co.*, 972 F.2d at 585).

Because the Court recommends the federal claims be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. *See Youngblood*, 920 F. Supp. at 107. The Court recommends the state law claims—survival action and wrongful death claims pursuant to Texas Civil Practice and Remedies Code §§ 71.0004(a), 71.002–71.021—be dismissed.

### D.    Moore's Opposed Motion for Joinder of Additional Party Plaintiff

Moore seeks to join Destiny Ceasar ("Destiny") "as a Plaintiff, in her individual capacity for her claims of emotional distress under a bystander theory because she was the sibling of the deceased, Dexter Cesar." (ECF No. 37 at 8–9). Moore relies upon Rules 19 and 20 for her requested joinder. (*Id.* at 6). Moore clarifies in her reply that Destiny seeks to assert "state law claims for negligent infliction of emotional distress as a bystander" and asks the Court to exercise supplemental jurisdiction over her proposed state law claims. (ECF No. 39 at 1–2). The City opposes joinder arguing Moore's bystander theory fails to state a claim upon which relief can be granted and Moore's bystander theory fails under Texas law. (ECF No. 38 at 2, 4).

Here, the Court recommends dismissal of all the federal law claims and declines exercising supplemental jurisdiction over the remaining state law

claims.  Because the Court declines exercising supplemental jurisdiction over state law claims, the Court also recommends Moore's Opposed Motion for Joinder of Additional Party Plaintiff be denied and such state law claims be asserted in the appropriate forum.

### E.    Leave to Amend

Moore seeks leave to amend her Complaint in the event the Court finds her Complaint deficient in any respect.  (ECF No. 16 at 22).

"'In this Circuit, when a district court dismisses the complaint, but does not terminate the action altogether, the plaintiff may amend under Rule 15(a) with permission of the district court.'"  *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 724 (5th Cir. 2008) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003)).  "However, given that 'the language of [Rule 15(a)] evinces a bias in favor of granting leave to amend, . . . the district court must possess a substantial reason to deny a party's request.'"  *Drake v. Walmart Inc.*, No. 3:20-cv-581, 2020 WL 10866997, at *2 (N.D. Tex. Oct. 19, 2020) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).  "A district court must possess a 'substantial reason' to deny a request for leave to amend but 'leave to amend is by no means automatic.'"  *Lale v. Coastal Med. Servs. of Tex.*, No. 06-cv-10, 2007 WL 2446545, at *1 (S.D. Tex. Aug. 23, 2007) (quoting *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th

Cir.1994) (citation omitted)).   "In determining whether leave should be granted, courts consider multiple factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment.'"   *Drake*, 2020 WL 10866997, at *2 (quoting *Marucci Sports, L.L.C.*, 751 F.3d at 378).

Here, Moore has not yet amended her Complaint and claims that none of the factors listed above are present here.  (ECF No. 16 at 22).  The City and HPD, Overstreet, and Vargas do not address Moore's request in their Replies. (*See* ECF Nos. 20, 24, 25).  Majority Defendants and Lopez did not file a Reply. The Court notes discovery does not close until February 3, 2025, and trial is set for September 29, 2025.  (ECF No. 33 at 1–2).  Because such deadlines are far away, Defendants will not suffer undue prejudice in allowing Moore leave to amend.  *See Lale*, 2007 WL 2446545, at *1.  Accordingly, the Court recommends Moore's request for leave to amend be granted.

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Moore's Opposed Motion for Joinder of Additional Party Plaintiff (ECF No. 37) be **DENIED**, the City's Opposed Motion to Strike Plaintiff's Surreply (ECF No. 28) be **DENIED**, the City and HPD's Rule 12(b)(6) Motion to Dismiss (ECF No. 12) be

**GRANTED**, Vargas' Rule 12(b)(6) Motion to Dismiss (ECF No. 13) be **GRANTED**, Overstreet's Rule 12(b)(6) Motion to Dismiss (ECF No. 14) be **GRANTED**, Lopez's Rule 12(b)(6) Motion to Dismiss (ECF No. 19) be **GRANTED**, and Majority Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 22) be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on August 28, 2024.

Richard W. Bennett
United States Magistrate Judge

35